Case number 417-0597, the people of the state of Illinois v. Dale Denny. For the appellant, we have Mr. Cagle. And for the appellee, we have Ms. Lagler. You may proceed. Thank you, Your Honor. May I please report? Counsel? Your Honor, the issue on brief, the substantive issue on brief, I believe, is generally undisputed between the position of the appellant and the appellee. I don't want to unduly use the court's time or my allotted time if that issue is agreed by the court as it's agreed on brief. To put it summarily, the appellant's FOIA card was revoked for a misdemeanor crime of domestic violence by the Illinois State Police, and that was based on a Fort County conviction for the offense of reckless conduct. On my brief, I analyzed that from state law principles as I understood them, basically in elements of the offense approach, what the state categorized under federal principles as a categorical approach. And I also looked at it under the charging instrument approach, and I think that's more referred to under federal law as the modified categorical approach. I think it's two ways of saying the same thing. Neither the charging instrument and the facts alleged there, nor the elements of the offense, meet the criterion for a misdemeanor crime of domestic violence as that term is defined under federal law. I think there's no issue to that. The Illinois State Police made an erroneous determination of law in analyzing this conviction for reckless conduct by my client. The circuit court level apparently gave deference to that determination by the Illinois State Police, and that's why we're here today. Addressing the issue of subject matter jurisdiction, which I think is the primary issue in this case. The question becomes, was the petitioner required to make a direct appeal to the administrator of the Illinois State Police or the director of the Illinois State Police prior to proceeding in the circuit court? Our position is that he did not, specifically for two reasons. Number one, the revocation of his FOIA card, I believe, is a final administrative decision that was not subject to further review. And the second reason is I believe that Section 10A of the FOIA Act confers a statutory right to judicial review as determined by the case law interpreting that statute. I'll address the final administrative decision argument first. Your Honor, the State cited the Williams case out of Tazewell County in the 3rd District in 2004 as saying that this was not a final administrative order. This case is clearly distinguishable from the Williams case. In the Williams case, the Williams court was dealing with an application for a FOIA card as distinguished from a revocation. Now, in that application, it's my understanding of the facts that the applicant put on the application that he had been convicted of the offense of domestic battery. As a result, the case seems to read, and I'm referring to Williams, seems to read that the ISP did not even process the application because of that answer on the defendant's application. I'm sorry, on the FOIA applicant's application. The Williams court, and this is the 3rd District, said that this wasn't really a denial. It was a failure to process by the State police. And they didn't see how it could be a final administrative determination in that court's opinion when no actual decision or determination had been made in the first place. They just didn't process the application. Now, that was the language of the Williams court in 2004. The 3rd District addressed the same issue, I want to say 11 years later, in the O'Neill case, and they came to a decidedly different result. In the O'Neill case, we had a case where the FOIA applicant had been convicted of simple battery. And in that case, the O'Neill court concluded that the administrative letter revoking his FOIA application was a final administrative decision and was therefore immediately appealable to the circuit court. The issue of subject matter jurisdiction and the claim that the O'Neill applicant had failed to exhaust administrative remedies was before the court directly in the O'Neill case. And the 3rd District in O'Neill, 10 years later, reached the opposite conclusion of the Williams court. So, I believe coming from the same judicial district, the more recent opinion should control, especially in light of the fact that we are dealing with a revocation in O'Neill, whereas Williams was dealing with an initial application where the Williams court said they didn't even make a decision in the first place, they just didn't process the app, and we have a statute that's been amended since the Williams case. So, I think all three of those factors suggest that if we're going by the 3rd District as authority for whether this is a final administrative decision or not, the O'Neill case should carry more weight. And the O'Neill case directly says that that letter that the FOIA holder received revoking his FOIA card from the state police was in fact a final administrative decision and that appeal to the director of the ISP was not even available under those circumstances. And that was again a simple battery case. And that was in line with the information your client received as well, correct? Yes, Your Honor. My client received, and there was a supplement to the record to include the instructions on appeal, he received a notice that his FOIA card had been revoked based on a federal disqualifier for a misdemeanor crime of domestic violence, section 922G I believe is the relevant federal provision. It cited specifically the reckless conduct provision in Ford County on the front page of the letter, the date of the conviction, and on the back had instructions for appeal, again citing section 922 of the Federal Gun Control Act and saying that if you don't challenge the accuracy of your conviction, you can't appeal to the director of the ISP. And your only remedy is an appeal within the circuit court within 35 days. So yes, that is absolutely consistent with the information that my client received. In addition to the O'Neill court... Well, is that information conferred or conveyed, I'm sorry, in that notice or letter? Is that in binding as far as establishing jurisdiction? I think jurisdiction... I think that the petitioner in this case was entitled to reasonably rely on that letter to ask a question. Do I think an administrative agency can override a statute or a Supreme Court case or something for when subject matter jurisdiction exists? No. I mean, generally, as I understand the law, the Illinois circuit courts have jurisdiction over all justiciable matters unless statute says they don't have jurisdiction over a matter. I believe in this particular case, section 10A of the FOIA Act does not deprive the circuit court of subject matter jurisdiction over this type of appeal. I don't think there's anything in the FOIA Act that says the circuit court can't hear the case. It says that someone revoked of a FOIA card may appeal to the director of the state police unless the basis for the revocation is one of several enumerated offenses. And the courts in Illinois that have interpreted that statute have interpreted it fairly broadly. They've not required conviction for the offenses or strict identity with the named offense. But it said in the context of domestic battery, as gone into in detail and brief, that if a revocation is based on a domestic battery, that triggered the right to appeal to the circuit court. And the revocation letter, to get back to that in this case, said you're barred by federal law under the misdemeanor crime of domestic violence provision, domestic. So I don't know what could be inferred from that letter other than this was a domestic violence-based conviction and that the director of the ISP would not entertain an appeal. And the only place to go was the circuit court. So I think that the letter does shed light on, number one, what the appellant was thinking when he filed the petition in the first place and what I, in representing him, was thinking. And I think it also should be presumed, in the absence of contrary evidence, to be congruent with the legislative intent. So I hope I responded adequately to that. Your Honor, several cases have addressed this issue, all of them in the context of a simple battery claim. The Odole case out of the 5th District, the O'Neill case already mentioned, the Frederick case out of the 2nd District, all involved fairly identical facts. Simple battery was the basis for the revocation in those cases. The same thing, a direct appeal straight to the circuit court. Relief was ultimately denied on the merits because the individuals petitioning in those cases had, in fact, committed a misdemeanor crime of domestic violence under federal law. The 4th District cases that I've found have not directly said this is a final administrative order or dealt with it as directly as the other three districts have. However, I'd note in the Walton case and in the Baumgartner case, if I'm pronouncing that correctly, Baumgartner case, the court did hear on the merits claims, similar type of claims, without the matter of subject matter jurisdiction being raised either sui sponte by the court or by the state. They cited the other cases, Odole, Frederick, and O'Neill, with approval in reaching their decision on the merits in that case. And I would, I think you'd have to assume the reviewing court read all of the case and read the subject matter jurisdiction issue that was raised by the state in those cases and would have raised it on its own motion if the 4th District thought, if those particular panels thought that subject matter jurisdiction was a bar to a petition in the circuit court. So I believe implicitly, not expressly, I can't go that far, implicitly, the 4th District has looked at this issue in light of its FOIA appeals and not found a bar to subject matter jurisdiction based on the absence of a prior administrative review. Your Honor, the concept of taking this type of problem directly to the circuit court, I believe makes sense from a public policy standpoint and I believe is also in line with the relevant statute and the letter that was sent by the ISP. We are asking here for a pure legal determination. This is not the typical kind of administrative issue we deal with where you have some kind of employment discrimination complaint under state law and there's a fact-finding investigation and evidence taken and things go on and a factual determination is made. Or what I'm more familiar with, the DCFS indicated appeal finding where you go before an administrative law judge and have a trial under relaxed rules of evidence and factual findings are made. That's not what happened here. In this particular case, the state police obviously got word of the conviction of reckless conduct and made a legal determination that revocation was required. I understand that sometimes in the context of enforcing their rules, administrative agencies have to make some kind of legal determination. But legal determinations are ultimately best decided by the courts. They are the experts. They are the people trained to interpret law and given the absolute duty to interpret the legal effect of a given set of facts. And it does not make sense to go back to the state police and say, did you really mean this? Yeah, Mr. Denny in this case was convicted of reckless conduct under this charging instrument and the statute reads this way, but did you really mean that? That's kind of like filing this. That's not an appeal. It's almost a motion to reconsider with no change in the facts given to the agency that made the initial legal determination. So that makes no sense. And it's consistent with the statutory interpretation that Mr. Denny had a right to take this right to the circuit court. In the O'Neill case, it was stated that one of the maxims of the law, the law does not require a person to do a useless act. Again, that type of appeal to the state police would have been useless for the reasons I just explained. And I think this is consistent with the statutory scheme that allows a circuit court appeal when the disqualifying conviction is based on a domestic battery incident. And I think it's consistent with the letter sent by the state police that said the only method of relief is to the circuit court. I think all of these things, when you realize that this is a pure legal determination, that the court needs to look at these elements and see if we've got a disqualifying conviction under federal law, based on the elements of the offense, based on the charging instruments, based on legal principles, not factual ones. When you put all this together, the court had subject matter jurisdiction. There was no requirement to go to the Illinois State Police and ask them to re-decide what they already decided on a pure legal basis. And what should have happened at the circuit court level was a revocation of this revocation, for lack of a more eloquent way of putting it. And in light of that, Your Honor, I'd ask the court to reverse the circuit court's decision and issue a mandate ordering the circuit court to order the state police to rescind the revocation of the appellant's FOIA card. Let me ask you a question. Is this simply an input error by the state police in terms of information, or do they look at the substance of the charge, they see the word FOIA, or are they doing that because they're trying to fit into the spirit of the federal law? And you won't be conceding anything because the state has conceded on this issue. So, I just want to know how it happens. Your Honor, I wish I knew. I'm speculating to say when you see a domestic battery conviction, I mean, that's obvious. When you see a battery conviction, okay, maybe there would be a little bit more inquiry from the state police when they get that record into the circuit court file to see what was in the charging instrument and those kind of things. Whether they did this with this offense and came to the wrong conclusion anyway, I don't know. Or whether they just put in reckless conduct, I don't know. Personally, I've had other FOIA owners that have pled to reckless conduct, and I've never had a FOIA card suspended under these facts. Now, granted, in fairness, there are elements. The domestic element is an element of this, and that wasn't present in some of the other cases I've dealt with, but I'm speculating as to how it happened. It shouldn't have happened. Thank you, Counsel. Thank you. Ms. Legler? May it please the Court? Good afternoon, Your Honors. Counsel? My name is Erin Wilson-Legler, and I appear on behalf of the state. Though the defendant's opening brief raised a number of issues, the state agrees that the sole issue before this Court is the subject matter jurisdiction issue. And to briefly recap, the Illinois State Police revoked the defendant's FOIA card following his conviction for misdemeanor reckless conduct. According to this revocation letter, the revocation was due to ISP's determination that this conviction for reckless conduct somehow constituted a misdemeanor crime of domestic violence, pursuant to the federal definition set forth in 18 U.S.C. 921a33a. Notably, a misdemeanor crime of domestic violence would constitute a federal disqualifier, thereby permitting ISP to revoke a FOIA card or to deny an application for a FOIA card. And as you note in the brief, the state agrees that this particular conviction for reckless conduct does not constitute a misdemeanor crime of domestic violence, and therefore the FOIA card was erroneously revoked. However, the defendant was required to go through the appropriate administrative channels prior to seeking relief in the judiciary. Section 10 of the FOIA Act sets forth the procedure for contesting the revocation of a FOIA card. And pursuant to Section 10, when a FOIA card is revoked or seized, the agreed party may appeal to the director of ISP, unless that revocation is based on one of the specifically enumerated offenses, in which case the defendant may bypass those administrative remedies and seek relief in the circuit court. Domestic battery is the only somewhat applicable offense that is enumerated in Section 10, but domestic battery doesn't apply in this case. And prior to addressing the merits of this argument, I first want to note for clarity that the question of whether the reckless conduct constitutes domestic battery with respect to determining jurisdiction is an entirely separate question of whether or not the reckless conduct actually constituted a misdemeanor crime of domestic violence. That latter question is the question that would be considered by the entity that has jurisdiction, whether it be the judiciary or ISP. Now, the defendant, as stated, was never convicted of domestic battery, he was never charged with domestic battery, and his conviction for reckless conduct can in no way be shoehorned into a battery of any kind because there was no element of force, which is the requisite element of battery. In his reply brief and in oral argument, defendant cites to Odole and Miller and O'Neill to support the argument that the court had jurisdiction in this case, and he notes the critical difference between those cases and the case of Barr, which is the fact that the defendants in those cases were charged and convicted with battery, whereas the defendant here was charged with reckless conduct and that reckless conduct had no element of force whatsoever. And because we can't interpret this conviction for reckless conduct as any way being battery, defendant's revocation was not based on domestic battery, meaning that he was not entitled to direct review by the circuit court and instead was required to appeal the decision to the director of ISP. In his reply brief, defendant appears to argue that the domestic nature of the conviction here, the fact that the victim was defendant's stepdaughter, somehow makes this issue fall within that domestic battery exception. However, that disregards the court's holdings in Odole and Miller and O'Neill, because as stated, those convictions each involved battery, whereas here we have no battery. Simply put, the revocation of defendant's void card was not based on a domestic battery, and that precluded direct review by the circuit court. So we're put in the position, though, of if he was convicted of domestic battery, he could appeal directly to the trial court, but he would lose. Probably. But since the state police either assess this erroneously, or use some wrong verbiage, or simply don't understand the federal law, they made that mistake. And while we want to exhaust administrative remedies, do we have to consider how worthwhile it would have been to seek review with the ISP when they send you a notice that says, forget it, buddy. Really, that's what that language... We're in a position where, if you're an officer of the state, in a sense, do you have to tell them? You've got to either be more careful about how you assess, or you've got to make sure that the notice you send is clear. That was all kind of garbled, but I think you understand what I mean. I mean, you don't have to do the useless act. No, Your Honor, you don't have to do a useless act, and the state would maintain that appealing to the director of ISP in this situation wouldn't necessarily be a useless act. If we're to assume that ISP is incapable of considering the facts and maybe taking a second look at this decision, and that ISP is incapable of changing its mind, then we would have no place for administrative appeals at all in our jurisprudence, and we wouldn't have the Exhaustion Doctrine to begin with, because we assume that administrative agencies are able to make correct decisions and to fairly consider the facts of the case. And that sort of gets to the purpose of having the Exhaustion Doctrine, which would allow the ISP to develop a more full record. I mean, there was no administrative record in this case, excepting the revocation letter. Had a defendant appealed to the director of ISP, they could have developed that record, they could have considered relevant law, they could have just even taken a more close look at this conviction and compared it to the federal definition, and I think it should have become clear that this case is not involved in misdemeanor crime and domestic violence. But that's the purpose of having the Exhaustion Doctrine, is we allow administrative agencies to correct their mistakes when they arise. Moreover, to address Your Honor's question from a different standpoint, the fact that the defendant did not appeal to the director of ISP deprived the circuit court of subject matter jurisdiction. Is it his failure to appeal or the erroneous information that caused the trial court to lose? They chose the language reckless conduct domestic. They're choosing that, either by mistake or by assessment. And then they're telling you, if you admit you were convicted of reckless conduct, don't bother us. Go to the circuit court. Your Honor, the phrase domestic leaves out the other term domestic battery, which section 10 is clear that the enumerated exception to administrative review is a conviction for domestic battery. ISP did not tell him that he was convicted of domestic battery. And getting to the appeal instructions on the back, it does state that if you agree that you were convicted of this crime, then you may seek relief in the circuit court. But the first part of the instructions say that if you challenge the accuracy of the record used to revoke your FOID card, you may appeal to the director of ISP. And so you can interpret those instructions to also require a defendant to have first appealed to the director of ISP because he challenged the accuracy of the decision. He's, in a sense, arguing that ISP made this erroneous decision, it is not accurate, and therefore the revocation should have never occurred. I took that language to mean if you're challenging your conviction, not challenging the decision of the agency. If this court interprets that language in that manner, the appeal instructions are then inconsistent with the statutory language of section 10. And it's a well-established principle of administrative law that where an agency's interpretation of a statute contradicts the express language of the governing statute, then the statutory language does prevail. And here, section 10 plainly required a defendant to appeal to the director of ISP because his conviction was not based on one of those enumerated offenses. So what is the record used to determine your firearm eligibility? Because it says to challenge the accuracy of the record used to determine your firearm eligibility. Here, the record consists solely of the letter sent to Mr. Denny revoking his FOIA card. I have not seen any... I mean, wouldn't the record consist of the proof of the conviction? One would think, but we don't have that in this case. And that also gets to part of the issue that this case simply does not fall within a domestic battery scenario. Because section 112A-11.1 sets forth a procedure that the trial court and the state are supposed to... a procedure wherein the defendant is supposed to be put on notice if the conviction that he is facing is one in which his FOIA card may be revoked due to a domestic violence issue. That didn't occur here in his plea to reckless conduct. I guess I'm just wondering, what would he challenge as to the accuracy? I mean, yes, I was convicted. I don't know what he would challenge as to the accuracy. I mean, obviously there was a problem in the process somewhere. Someone interpreted something wrong, but when you get down to the crux of what they used, he's not really disputing that he was convicted. I don't know. I mean, to me it seems pretty clear that they're just talking about if you want to contest your conviction. He doesn't want to do that. He agrees that was my conviction, but then something went awry outside of that. Your Honor, the accuracy... The contesting the accuracy of the decision, or of the record in this case, would be ISP's decision that this constitutes a misdemeanor crime of domestic violence. I understand Your Honor's point that he's not challenging the fact that he was convicted of reckless conduct. However, even if those appeal instructions do indicate that the defendant was entitled to direct review by the circuit court, those appeal instructions, ISP's interpretation of the law, are inconsistent with Section 10, which is the governing statute giving ISP the ability to enforce the Floyd Act. And where that interpretation is inconsistent with the statutory language, the statutory language must prevail. And we keep coming back to the point that the defendant was only entitled to direct review by the circuit court if his conviction was based on one of those enumerated offenses, which is simply not the case here. During his argument, the defendant noted the state citation to Williams v. Caswell County State's Attorney's Office and attempted to distinguish that scenario from the facts at bar by arguing that this case is different because it is a revocation of a Floyd card as opposed to an application. However, that difference has no import because the holding there was that where a defendant fails to exhaust his administrative remedies by appealing to the director of ISP when he is statutorily required to do so, the circuit court is without jurisdiction to consider the claim because the defendant is required to exhaust his administrative remedies. Whether it's the denial of an application or the rejection of an application or the revocation of a card, it doesn't change that aspect. And if there are no further questions from... I don't see any at this time. Thank you. Thank you, Your Honors. Any rebuttal, counsel? Your Honor, with respect to whether the accuracy of the offense to be challenged is the 922G9 provision. USC 922G9 is not an offense. That is not a criminal offense. That is a basis for disqualification under a federal firearms regulatory scheme. You run somebody's criminal history check, you're not going to see the statute listed 922G. You may see battery, you may see reckless conduct, you may see any number of things, but that is not an offense. It is a disqualifier. The offense is reckless conduct. Now this particular letter says, unless you can challenge the accuracy of your conviction for the offense, and what is listed on page one of this revocation notice is absolutely accurate as to date, county, and offense. Unless you can challenge that, then the ISP cannot grant relief. And that's where they go on to say, please note that if you agree that you were convicted of the offense, noted above, the director of the Illinois State Police is not able to grant relief. Exactly, and here's the position that puts counsel in. You either have to file some kind of tandem proceeding in the circuit court and hold off hearing while the ISP hears your appeal, or you have to take the chance that the ISP will hear your appeal and get it done within the window, the 35-day window of appeal to the circuit court. Otherwise, you've lost jurisdiction for your appeal of this situation in the circuit court, which is meritorious, and you've already seen the ISP misinterpret the law once. So as counsel handling this situation, what do you do? The obvious thing to do was go to the circuit court based on the language in the notice of revocation. And I disagree with counsel respectfully that Section 10A requires administrative review. I don't see the term must in Section 10A. I see the term may. When I read Section 10A, the agreed party may appeal to the director of the state police for a hearing upon a revocation, unless the denial is based on one of the enumerated offenses. So it's a may appeal to the state police unless you can't appeal to the state police. And there is case law that suggests, and the letter suggests that you can't appeal to the state police when it's based on a domestic battery or a federal disqualifier arising out of an offense based on a domestic battery. So the term must is not used in Section 10A. The term may is. And that unless option limits that. It doesn't limit the way to appeal to the state police. It doesn't require appeal to the state police. It appears my time is finished. If there's no further... I don't see any other questions. Thank you, counsel. We'll be in recess. This matter will be taken under advisement.